# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-303-DCK

| | |
|---|---|
| ATUL R. PATEL and CHANDRIKA R. PATEL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| FIFTH THIRD BANK, INC., ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendant's Motion For Judgment On The Pleadings" (Document No. 10). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition. Having carefully considered the motion, the record, and applicable authority, the undersigned will <u>deny</u> the motion.

## PROCEDURAL BACKGROUND

Atul R. Patel ("Mr. Patel") and Chandrika R. Patel ("Mrs. Patel"), (together "Plaintiffs" or the "Patels") initiated this action with the filing of their "Complaint" (Document No. 1-1) in the Superior Court of Mecklenburg County, North Carolina, Case No. 18-CVS-9309, on May 1, 2018. The Complaint asserts claims against Fifth Third Bank, Inc. ("Defendant" or "Fifth Third") for: (1) breach of contract; (2) actual fraud; (3) constructive fraud; (4) conversion; (5) larceny; (6) obtaining property by false pretenses; and (7) negligent retention/hiring and supervision. (Document No. 1-1, pp. 10-16).

Defendant's "Notice Of Removal" (Document No. 1) was filed in this Court on June 11, 2018. Defendant contends that removal is appropriate because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. (Document No.

1, p. 1). Defendant's "Answer And Affirmative Defenses" (Document No. 4) was then filed on June 18, 2018.

Following the parties' "Certification And Report Of F.R.C.P. 26(f) Conference And Proposed Discovery Plan" (Document No. 6) and "Joint Stipulation of Consent To Exercise of Jurisdiction by a United States Magistrate Judge" (Document No. 7), the undersigned issued a "Pretrial Order And Case Management Plan" (Document No. 9) on July 24, 2018. The "…Case Management Plan" included the following deadlines: discovery completion – December 28, 2018; mediation report – January 15, 2019; dispositive motions – January 25, 2019; and trial term – July 1, 2019. (Document No. 9).

"Defendant's Motion For Judgment On The Pleadings" (Document No. 10) and "Memorandum Of Law In Support…" (Document No. 11) were filed on August 17, 2018. On September 5, 2018, "Plaintiffs' Memorandum Of Law In Opposition To Defendant's Motion For Judgment On The Pleadings" (Document No. 13) was filed. Defendant's "Reply In Further Support Of Defendant's Motion For Judgment On The Pleadings" (Document No. 15) was filed September 19, 2018.

Plaintiffs filed a "Designation Of Expert" (Document No. 18), along with their expert's "Curriculum Vitae" (Document No. 18-1) ) and "Report of Examination" (Document No. 18-2) on November 2, 2018.[1]

The case deadlines were amended on December 18, 2018, pursuant to the parties' joint motion (Document No. 20) as follows: discovery completion – February 28, 2019; mediation

---

[1] "Discovery materials are NOT to be filed. The parties are responsible for the preservation of any and all discovery materials they may generate." (Document No. 9, p. 2). See also Local Rule 26.2.

report – March 8, 2019; dispositive motions – March 22, 2019; and trial term – August 5, 2019. (Document No. 21).

On February 19, 2019, the parties' mediator, Edward B. Davis, filed a "Certification Of Mediation Session" (Document No. 22) reporting that the parties' attempt to settle the case had reached an impasse.

The pending "Motion For Judgment On The Pleadings" is ripe for review and disposition.

**STANDARD OF REVIEW**

Rule 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings. Fed.R.Civ.P. 12(c). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (quoting Drager v. PLIVA USA, Inc., 741 F.3d 470, 474 (4th Cir. 2014)). In resolving a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view the facts in the light most favorable to the nonmoving party. Bradley v. Ramsey, 329 F.Supp.2d 617, 622 (W.D.N.C. 2004).

A motion for a judgment on the pleadings is decided under a similar standard as a motion to dismiss brought under Fed.R.Civ.P. 12(b)(6), "with the key difference being that on a 12(c) motion, 'the court is to consider the answer as well as the complaint.'" Bradley, 329 F.Supp.2d at 622 (quoting Continental Cleaning Serv. v. United Parcel Serv., Inc., 1999 WL 1939249 at * 1 (M.D.N.C. 1999)); see also Burbach Broadcasting Co. of Delaware v. Elkins Radio, 278 F.3d 401, 405 (4th Cir. 2002). "[D]ocuments attached to the Answer are part of the pleadings for Rule 12(c) purposes, and may be considered without converting a motion for judgment on the pleadings into a motion for summary judgment, only if the documents are central to the Plaintiff's claim and the

authenticity is not challenged."  Mendenhall v. Hanesbrands, Inc., 856 F.Supp.2d 717, 724 (M.D.N.C. 2012).  The court may consider materials referenced in, incorporated by reference, or attached to the pleadings, as well as exhibits to a Rule 12(c) motion that are integral to the complaint and authentic.  See Fed.R.Civ.P. 10(c);  Massey, 759 F.3d at 353;  see also Massey, 3:11-CV-477-RJC-DCK, 2012 WL 2992129 (W.D.N.C. July 20, 2012).

**DISCUSSION**

Factual Background

In support of their claims, Plaintiffs note that on or about November 20, 2015, they entered into a Safe Deposit Box Lease Agreement (the "Agreement") with Defendant for the lease of a safe deposit box, originally bearing locker number 31 (the "Original Box").  (Document No. 1-1, p. 8); see also (Document No. 13, p. 2).  Plaintiffs contend that "[t]he Agreement constitutes a valid, binding and enforceable agreement between Plaintiffs and Defendant" (Document No. 1-1, p. 10).[2]  Plaintiffs assert that after executing the Agreement, they placed approximately $40,000 in cash, and jewelry with an approximate value of $40,000 (collectively, the "Goods"), into the Original Box.  (Document No. 1-1, p. 8); see also (Document No. 13, p. 2).

In late 2017, Plaintiffs discovered that they had been assigned a new safety deposit box, of a different size, location, and locker number than the original (the "New Box").  (Document No. 1-1, p. 9).  The New Box was empty – devoid of any of Plaintiff's Goods placed in the Original Box.  Id.  Plaintiffs note that records indicate that they did not access the Original Box at all in 2015 or 2016.  Id.  Plaintiffs further note that Defendant's records show that the Original and/or New Box was accessed on eight (8) occasions in 2017;  however, Plaintiffs assert that they did not

---

[2]  Neither the Complaint, nor Plaintiffs' subsequent filings, attach copies of the alleged Agreement or any other documents related to Plaintiffs' claims.

access the Original or New Box on any of those dates.  Id.  Plaintiffs allege that one or more of Defendant's employees forged the signature of Mrs. Patel in order to defraud Plaintiffs and access the Original and/or New Box and possess Plaintiffs' Goods.  Id.

Motion for Judgment on the Pleadings

By the pending motion for judgment on the pleadings, Defendant contends that Plaintiffs have improperly recast a simple contractual claim as one for fraud and other torts. (Document No. 11, p. 1).  Defendant suggests that Plaintiffs are attempting to avoid the agreed-upon $10,000 limitation of liability in their safe deposit box lease agreement(s).  Id.  See also (Document Nos. 8, p. 2;  11-1, pp. 2 and 6).  Defendant argues that the Court should order that the limitation of liability provision applies to limit the relief Plaintiffs seek and that because a contract governs this dispute, the other claims are barred by North Carolina's Economic Loss Rule and/or fail as a matter of law.  Id.

Defendant agrees with the factual allegation in the Complaint that the parties entered into a "Fifth Third Bank Safe Deposit Box Lease Agreement" on November 20, 2015, but contends that the box number for that agreement ended in 016-6, not 31.  Compare (Document No. 1-1, p. 8;  Document No. 11, p. 2;  Document No. 11-1, pp. 2-4).  In addition, Defendant asserts that the parties had also executed a "Fifth Third Bank Safe Deposit Box Lease Agreement" on September 28, 2013, related to a box number ending in 1031.  (Document No. 11, p.2;  Document No. 11-1, pp. 6-7).

Defendant notes that both Safe Deposit Box Lease Agreements include identical terms that limit Fifth Third's liability, including:

> FIFTH THIRD SHALL NOT BE LIABLE FOR ANY LOSS BY FIRE, THEFT, BURGLARY, ROBBERY, EMBEZZLEMENT, OR ANY OTHER CAUSE UNLESS FIFTH THIRD HAS FAILED

> TO EXERCISE REASONABLE CARE TO PREVENT THE AFOREMENTIONED OCCURRENCES.
>
> . . .
>
> SHOULD IT BE DETERMINED THAT FIFTH THIRD BANK IS LIABLE FOR ANY LOSS RELATING TO LESSEE'S BOX, LESSEE AGREES THAT FIFTH THIRD'S LIABILITY SHALL NOT EXCEED TEN THOUSAND DOLLARS ("$10,000).

(Document No. 11, p.3) (quoting Document No. 11-1, pp. 2 and 6).

Defendant argues that this dispute is governed by the undisputed terms of the lease agreements between the parties – and that "Plaintiffs do not dispute the authenticity nor the validity of the lease agreements." (Document No. 11, p. 6) (citing Document No. 1-1, ¶ 19). According to Defendant, all the claims here relate to one or both lease agreements for safe deposit boxes. (Document No. 11, p. 7). Defendant further argues that North Carolina's Economic Loss Rule limits a plaintiff to contract claims against a party who simply fails to perform the terms of the contract. Id. (citing Rountree v. Chowan Cty., 796 S.E.2d 827, 831 (N.C. Ct. App. 2017); Moore v. Coachmen Indus., Inc., 499 S.E.2d 772, 780 (N.C. Ct. App. 1998) ("To give a party a remedy in tort . . . would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract."); Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 345-47 (4th Cir. 1998) (holding district court erred in allowing tort claims where the contract at issue governed every aspect of the relationship); Strum v. Exxon Co., 15 F.3d 327, 329-31 (4th Cir. 1994) ("Only where a breach of contract also constitutes an 'independent tort' may tort actions be pursued."); and First Care Med. Clinic, Inc. v. Polymedco, Inc., 3:05-CV-082-DCK, 2006 WL 3497845, at *4 (W.D.N.C. Dec. 4, 2006) (applying North Carolina Economic Loss Rule to bar a purchaser's tort claims against a seller seeking recovery of economic losses for an allegedly defective product)).

Defendant further argues that Plaintiffs' allegations of fraud, constructive fraud, and false pretenses all fail as a matter of law, primarily because they are inadequately pled and because there was no relationship of trust or confidence between the parties. (Document No. 11, pp. 8-12).

The crux of Plaintiffs' opposition to Defendant's motion is that the safe deposit box lease agreements and attachments were "forged or otherwise obtained by fraud." (Document No. 13, p. 1). See also (Document Nos. 8 and 11-1). "As to documents attached to the Answer and referred to in the Motion, these documents should not be considered by the Court as their authenticity is challenged as are their terms, conditions, and applicability."[3] (Document No. 13, p. 2). Moreover, the opposition contends that the pending motion is premature because neither party has engaged in discovery. Id.

Plaintiffs argue that it is disputed "what, if any agreement(s) govern this dispute." (Document No. 13, p. 5). Plaintiffs then acknowledge that they alleged that on or around November 20, 2015, they entered into an agreement with Fifth Third for the lease of a safe deposit box, but they "are neither convinced of nor prepared to stipulate to the authenticity of any of the documents Fifth Third has proffered to date." Id. Plaintiffs seem to suggest that because Defendant's supporting documents may not be valid or authentic, this motion for judgment on the pleadings must be denied.

Plaintiffs also suggest that the $10,000 liability limit in the agreement(s) is ambiguous and unenforceable under North Carolina law. (Document No. 13, p. 6). Plaintiffs further argue that

---

[3] Notably, Plaintiffs argue that the Court should not consider Defendant's attachments, but they decline to specifically address the purported agreement dated September 28, 2013. In addition, although Plaintiffs allege that a "valid, binding and enforceable agreement" between the parties was reached on November 20, 2015, and that "they only ever signed one agreement," they do not explain which of the agreements produced by Defendant they contend is "forged or otherwise obtained by fraud," nor do they identify any alternative document consistent with the Agreement alleged in the Complaint. See (Document No. 1-1; Document No. 13, p. 1; Document No. 11-1).

7

the economic loss doctrine does not bar their claims, and that their claims are sufficiently pled. (Document No. 13, pp. 8-12).

In reply, Defendant effectively re-asserts its legal arguments. (Document No. 15). In addition, Defendant addresses Plaintiffs' suggestion that one of the agreements was forged by arguing that the other agreement must then be valid and enforceable. (Document No. 15, p. 4) (citing Document No. 13, p. 1). Thus, Defendant concludes that Plaintiffs' authenticity challenge is futile. Id.

Overall, the undersigned finds Defendant's arguments to be compelling. However, based on the challenges to the authenticity of Defendants' supporting documents, and out of an abundance of caution, the Court will decline at this stage to grant Defendant's requested relief. The undersigned notes that through no fault of the parties, the pending motion is somewhat stale. The undersigned expects that a subsequent dispositive motion, more fully informed by the now completed discovery process and applying a summary judgment standard, may be a more appropriate vehicle for determining the proper resolution of this matter.

Assuming this case proceeds to summary judgment, the parties should be in a better position to address the authenticity of relevant documents by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Of course, if genuine issues of material fact remain as to one or more claims, the undersigned expects this case to go to trial in August 2019.

Based on the foregoing, the undersigned will deny the pending motion; however, such denial is without prejudice to either party asserting similar arguments in a motion for summary judgment, on or before the revised dispositive motions deadline.

## CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendant's Motion For Judgment On The Pleadings" (Document No. 10) is **DENIED**.

**IT IS FURTHER ORDERED** that the dispositive motions deadline is extended to **April 12, 2019**.

**SO ORDERED**.

Signed: March 15, 2019

David C. Keesler
United States Magistrate Judge